## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELE J. BARKE,<br><br>      Plaintiff,<br><br>vs.<br><br>MIKE FERGUSON, JASON SLAKTER, ORIN HIRSCHMAN, THOMAS RIEDHAMMER, JUNE S. ALMENOFF, NEUBASE THERAPEUTICS, INC., and OHR ACQUISITION CORP.,<br><br>      Defendants. | Civil Action No:<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Adele J. Barke ("Plaintiff") alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against the members of Ohr Pharmaceutical, Inc. ("Ohr", the "Parent" or the "Company") board of directors (referred to as the "Board" or the "Individual Defendants," and, together with Ohr, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Ohr by Neubase Therapeutics, Inc. ("Neubase" or the "Surviving Corporation").

2.  On January 2, 2019, Ohr, Neubase, and Ohr Acquisition Corp. ("Merger Sub") entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement").

3.      Pursuant to the Merger Agreement: (i) Merger Sub will merge with and into Neubase, with Neubase surviving the merger (the "Proposed Transaction").

4.      On March 8, 2019, in order to convince Ohr's public common shareholders to vote in favor of the Proposed Transaction, Defendants (defined below) filed a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue will have an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (iii) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

8.      ***Ohr Pharmaceutical, Inc.*** is a Delaware corporation with its principal executive offices located at 800 Third Avenue, 11th Floor, New York, New York 10022.  Ohr is a

pharmaceutical company which has been focused on the development of novel therapeutics and delivery technologies for the treatment of ocular disease.  Ohr common stock is traded under the ticker symbol "OHRP."

## THE PARTIES

**Plaintiff**

9.      ***Plaintiff Adele J. Barke*** is, and at all relevant times, has been an Ohr stockholder.

**Defendants**

10.      ***Defendant Mike Ferguson*** ("Ferguson") is, and has been at all relevant times, a director of the Company, and currently serves as the its Chairman of the Board.

11.      ***Defendant Jason Slakter*** ("Slakter") is, and has been at all relevant times, a director of the Company, and is its Chief Executive Officer ("CEO").

12.      ***Defendant Orin Hirschman*** ("Hirschman") is, and has been at all relevant times, a director of the Company.

13.      ***Defendant Thomas Riedhammer*** ("Riedhammer") is, and has been at all relevant times, a director of the Company.

14.      ***Defendant June S. Almenoff*** ("Almenoff") is, and has been at all relevant times, a director of the Company.

15.      The parties in paragraphs 10 through 14 are collectively referred to herein as the "Board" or "Defendants".

16.      ***Defendant Neubase Therapeutics Inc.*** ("Neubase" or the "Company", or the "Surviving Corporation") is a private Delaware corporation with its principal executive offices located at 213 Smithfield Street, Pittsburg, Pennsylvania 15222, and is a party to the Merger Agreement.

17.     ***Defendant Ohr Acquisition Corp.*** ("Merger Sub") is a Delaware corporation and a direct wholly-owned Subsidiary of Parent, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18.     On January 3, 2019, the Ohr and Neubase issued a joint press release announcing the Proposed Transaction. The press release stated in relevant part:

**Ohr Pharmaceutical, Inc. Announces Merger Agreement with NeuBase Therapeutics, Inc.**

\*     \*     \*

**NEW YORK, January 3, 2019** -- Ohr Pharmaceutical, Inc. ("Ohr") (Nasdaq: OHRP) announced today that it has entered into a definitive merger agreement with NeuBase Therapeutics, Inc. ("NeuBase"), under which the stockholders of NeuBase would become the majority holders of the combined company. The proposed merger will create a public company focused on advancing NeuBase's peptide-nucleic acid (PNA) antisense oligonucleotide (PATrOL™) technology platform for the development of therapies to address severe and currently untreatable diseases caused by genetic mutations.

Upon closing of the transaction, the combined company will change its name to "NeuBase Therapeutics, Inc." and propose its trading symbol on the NASDAQ be changed to "NBSE". The executive team of NeuBase will serve as the executive team of the combined company, led by Dietrich A. Stephan, Ph.D. as Chief Executive Officer.

"We are excited to enter into a definitive merger agreement with NeuBase, a company with a powerful technology and pipeline that has the potential to address multiple unmet medical needs across a range of serious genetic diseases," said Jason Slakter, M.D., Chief Executive Officer of Ohr Pharmaceutical. "Following a comprehensive review of strategic alternatives, Ohr's Board of Directors concluded that the proposed transaction with NeuBase is in the best interest of our stockholders. The proposed merger will provide an opportunity to create value as an innovative, science-driven company with a proprietary technology platform utilizing advanced gene silencing techniques. We intend to hold a special meeting of Ohr shareholders in the first half of 2019 to vote on this merger."

"The proposed merger with Ohr signals the next stage of growth for NeuBase," added Dr. Dietrich Stephan, Chief Executive Officer of NeuBase Therapeutics. "The company's new therapeutic modality has the potential to address a wide range of germline and somatic diseases caused by inappropriate expression and change-

of-function mutations of genes. Our technology has significant potential advantages over currently available antisense and small molecule approaches to gene silencing, including high selectivity for targets, cell membrane and blood brain barrier permeability, early data indicating no immune response and a low cost of goods. These characteristics are essential for scalability in addressing a wide range of genetic diseases, including cancer. We are initially developing this exciting platform for RNA gene silencing in Huntington's disease and myotonic dystrophy, with additional future, high value RNA silencing indications."

NeuBase's modular PATrOL™ technology platform is being developed to treat a multitude of rare genetic diseases. The systemicallydeliverable PATrOL™ therapies have the potential to improve upon current gene silencing treatments by combining the advantages of synthetic small molecule approaches with the precision of antisense technologies. NeuBase's development is currently focused on severe neurological disorders such as Huntington's disease and myotonic dystrophy, where blood-brain barrier penetration and broad tissue distribution are critical. In some cases, such as Huntington's disease, systemic administration may ameliorate both CNS and non- CNS pathology, a benefit that current intrathecally administered therapies cannot achieve.

**About the transaction**

On a pro forma basis and based upon the number of shares of Ohr common stock to be issued in the merger, current Ohr stockholders will own approximately 20% of the combined company and NeuBase stockholders will own approximately 80% of the combined company, after accounting for the additional NeuBase financing transaction. The actual allocation will be subject to adjustment based on Ohr's and NeuBase's cash balance at the time of closing and the amount of the additional financing consummated by NeuBase at or before the closing of the merger. Certain members and affiliates of the board of directors and management of Ohr and Neubase have indicated an intent to invest in the additional NeuBase financing transaction.

The proposed transaction has been approved by the board of directors of both companies. The merger is subject to the approval of Ohr shareholders at a special meeting of shareholders, which is expected to occur in the first half of 2019, along with the satisfaction or waiver of other customary conditions.

This communication does not constitute an offer to sell, or the solicitation of an offer to buy, any securities.

Roth Capital Partners, LLC is acting as financial advisor to Ohr for the transaction and Troutman Sanders LLP is serving as legal counsel to Ohr. Allele Capital Partners, LLC at Tribal Capital Markets, LLC is acting as financial advisor and Paul Hastings LLP is serving as legal counsel to NeuBase.

**Additional Information about the Merger and Where to Find It**

In connection with the Merger, the Company intends to file relevant materials with the Securities and Exchange Commission (the "SEC"), including a registration statement on Form S-4 that will contain a prospectus, joint proxy and information statement. Investors and security holders of the Company and NeuBase are urged to read these materials when they become available because they will contain important information about the Company, NeuBase and the Merger. The joint proxy statement, information statement, prospectus, and other relevant materials (when they become available), and any other documents filed by the Company with the SEC, may be obtained free of charge at the SEC web site at www.sec.gov. In addition, investors and security holders may obtain free copies of the documents filed with the SEC by the Company by directing a written request to: Ohr Pharmaceutical, Inc., 800 Third Avenue, 11th Floor, New York, NY, Attention: Corporate Secretary. Investors and security holders are urged to read the joint proxy statement, prospectus and the other relevant materials when they become available before making any voting or investment decision with respect to the Merger.

\* \* \*

*Participants in the Solicitation*

The Company and its directors and executive officers and NeuBase and its directors and executive officers may be deemed to be participants in the solicitation of proxies from the stockholders of the Company in connection with the proposed transaction. Information regarding the special interests of these directors and executive officers in the merger will be included in the joint proxy statement/prospectus referred to above. Additional information regarding the directors and executive officers of the Company is also included in the Company's Annual Report on Form 10-K for the year ended September 30, 2018 and the proxy statement for the Company's 2018 Annual Meeting of Stockholders. These documents are available free of charge at the SEC web site (www.sec.gov) and from the Company, Attn: Corporate Secretary, at the address described above.

19.    The Merger Consideration is unfair because, among other things, the intrinsic value of Ohr is in excess of the amount its shareholders will receive in connection with the Proposed Transaction.

20.    It is therefore imperative that Ohr's common shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

## THE MERGER AGREEMENT

21.     Section 5.13 of the Merger Agreement provides for a "non-solicitation" clause that prevents Ohr from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

**Section 5.13    <u>Non-Solicitation by Parent</u>**

(a)     During the Pre-Closing Period, Parent will not and will not authorize or permit any of its Subsidiaries or any Representative of Parent or its Subsidiaries, directly or indirectly, to, (i) solicit, initiate, knowingly encourage, induce or facilitate the making, submission or announcement of any Acquisition Proposal or take any action that would reasonably be expected to lead to an Acquisition Proposal, (ii) furnish any nonpublic information regarding Parent or its Subsidiaries to any Person in connection with or in response to an Acquisition Proposal or an inquiry or indication of interest that could lead to an Acquisition Proposal, (iii) engage in discussions or negotiations with any Person with respect to any Acquisition Proposal, (iv) approve, endorse or recommend any Acquisition Proposal or (v) enter into any letter of intent or similar document or any agreement contemplating or otherwise relating to any Acquisition Transaction (other than an Acceptable Parent Confidentiality Agreement); provided, however, that prior to the adoption of this Agreement by the Parent Stockholder Approval, this Section 5.13(a) will not prohibit Parent from furnishing nonpublic information regarding Parent and its Subsidiaries to, or entering into discussions with, any Person in response to an Acquisition Proposal that, after consultation with its outside financial and legal advisor, Parent's board of directors determines in good faith is, or would reasonably be expected to result in, a Superior Offer (and is not withdrawn) if (1) neither Parent nor any Representative (or its Subsidiaries) will have breached this Section 5.13(a), (2) the board of directors of Parent concludes in good faith, after having taken into account the advice of its outside legal counsel, that such action is required in order for the board of directors of Parent to comply with its fiduciary obligations to the Parent Stockholders under applicable Legal Requirements, (3) at least two (2) Business Days prior to furnishing any such information to, or entering into discussions with, such Person, Parent gives Company written notice of the identity of such Person and of Parent's intention to furnish information to, or enter into discussions with, such Person, and Parent receives from such Person an executed confidentiality agreement on terms no more favorable to Parent than the confidentiality agreement between Parent and Company and containing customary limitations on the use and disclosure of all

nonpublic written and oral information furnished to such Person by or on behalf of Parent as well as customary "standstill" provisions (an, "Acceptable Parent Confidentiality Agreement") (4) at least two (2) Business Days prior to furnishing any such information to such Person, Parent furnishes such nonpublic information to Company (to the extent such nonpublic information has not been previously furnished by Parent to Company).

(b)     Parent will promptly (and in no event later than 24 hours after receipt of any Acquisition Proposal, any inquiry or indication of interest that could lead to an Acquisition Proposal or any request for nonpublic information) advise Company orally and in writing of any Acquisition Proposal, any inquiry or indication of interest that could lead to an Acquisition Proposal or any request for nonpublic information relating to Parent or its Subsidiaries (including the identity of the Person making or submitting such Acquisition Proposal, inquiry, indication of interest or request, and the material terms thereof) that is made or submitted by any Person during the Pre-Closing Period. Parent will keep Company informed on a prompt basis in all material respects with respect to the status of any such Acquisition Proposal, inquiry, indication of interest or request and any modification or proposed modification thereto.

(c)     Parent will immediately cease and cause to be terminated any existing discussions with any Person that relate to any Acquisition Proposal.

22.     In addition, Section 7.3(c) of the Merger Agreement requires Ohr to pay $250,000 thousand as a "termination fee" to Neubase in the event this agreement is terminated by Ohr and improperly constrains Ohr from obtaining a superior offer.

## THE MATERIALLY INCOMPLETE AND MISLEADING PROXY

23.     On March 8, 2019, Defendants filed an incomplete and misleading Proxy with the SEC and disseminated it to the Company's shareholders.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.

25.     ***First***, the Proxy omits any of the financial projections for Ohr, NeuBase or the synergies of the combined company.

26.     ***Second***, the Proxy fails to provide shareholders with the price at which NeuBase will issue pre-merger stock per the disclosure below:

In connection with the merger, NeuBase has entered into financing agreements which will result in gross proceeds to NeuBase of $9.0 million consisting of (i) irrevocable commitment letters with certain accredited investors (the "Investors") pursuant to which, among other things, the Investors irrevocably ***committed to purchase shares of NeuBase common stock immediately prior to the merger in a private placement transaction for an aggregate purchase price of approximately $8.40 million*** (the "NeuBase Equity Financing") and (ii) 6% Convertible Notes (the "2019 Convertible Notes") in the aggregate principal amount of $600,000 (the "NeuBase Debt Financing," and together with the NeuBase Equity Financing, the "NeuBase Financings") issued to certain accredited investors. The 2019 Convertible Notes are automatically convertible into NeuBase common stock immediately preceding the closing of the NeuBase Equity Financing at a conversion price equal to a 90% of the purchase price per share of the NeuBase common stock issued in the NeuBase Equity Financing. ***The initial exchange ratio in the Merger Agreement was based on Ohr having minimum cash of $1.0 million at the closing of the merger and NeuBase receiving minimum proceeds of $4.0 million in the NeuBase Financing, and if such amounts were achieved, the current stockholders, option holders, warrant holders and note holders of NeuBase were expected to own, or hold rights to acquire, approximately 80% (the "Original NeuBase Allocation Percentage") of the fully-diluted common stock of Ohr, which for these purposes is defined as the outstanding Ohr common stock, plus "in the money" options and warrants of Ohr, assuming that all "in the money" options and warrants of Ohr outstanding immediately prior to the merger are exercised immediately prior to the closing of the merger (the "Fully-Diluted Common Stock of Ohr"), and Ohr's current stockholders, option holders and warrant holders were expected to own, or hold rights to acquire, approximately 20% (the "Original Ohr Allocation Percentage") of the Fully-Diluted Common Stock of Ohr.*** The Merger Agreement provides that the Original NeuBase Allocation Percentage will be increased by 0.1% for every $100,000 that the proceeds from the NeuBase Financings exceed $4.0 million, and the Original Ohr Allocation Percentage will be decreased by 0.1% for every $100,000 that the proceeds from the NeuBase Financings exceed $4.0 million. As a result of the NeuBase Financings resulting in proceeds of $9.0 million, it is expected that immediately after the merger, and after giving effect to the NeuBase Financings, current stockholders, option holders, warrant holders and note holders of NeuBase will own, or hold rights to acquire, approximately 85% of the Fully-Diluted Common Stock of Ohr, and Ohr's current stockholders, option holders and warrant

holders will to own, or hold rights to acquire, approximately 15% of the Fully-Diluted Common Stock of Ohr.  [Emphasis added].

27.     *Third*, Roth Capital Partners LLC ("Roth") values NeuBase between $56.8 and $216.6 million.  It would be relevant to know the pre-merger valuation indicated by the private placement.

28.     *Fourth*, page two (2) of the Proxy states that the exchange ratio is subject to adjustment to account for a reverse stock split of OHRP at a ratio of "not less than one-for-two and not more than one-for-fifteen with the exact ratio to be determined by mutual agreement…" The actual reverse stock split on February 4 was one-for-twenty.  Does the higher than expected reverse stock split ratio have an impact on the exchange ratio and if so, by how much?

29.     *Fifth*, the Proxy has a *Discounted Cash Flow Analysis* that was prepared by Roth. However, this *Discounted Cash Flow Analysis* in the Proxy fails to provide the following relevant information: (a) the probability of success adjustments applied to the free cash flows; (b) the inputs and assumptions underlying selection of the 1.0x to 2.0x terminal multiples used to derive the terminal values; and (c) the actual terminal values calculated.

30.     *Sixth*, the Background of the Merger section in the Proxy states that the Company and several other parties entered into confidentiality agreements.  However, this section fails to disclose whether such agreements contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision.

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy with the intention of soliciting the support of shareholders for the Proposed Transaction.  Upon information and belief, each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information detailed above.

35.     In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles in the Proposed Transaction, was aware of the omitted material information but failed to disclose such information, in violation of Section 14(a).  Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could

have done so without extraordinary effort.

36.     The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

37.     Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

38.     Defendants violated the securities laws in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws.  Defendants and the Individual Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which the Individual Defendants were required to do in their roles as officers and directors of the Company.

39.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

40.     Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions

threaten to inflict.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF
SECTION 20(A) OF THE EXCHANGE ACT)**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Ohr within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Ohr, and participation in and/or awareness of its operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ohr, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ohr, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

45.     In addition, as set forth in the Proxy sets forth at length and described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and Ohr's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A)     declaring that the Proxy is materially false and/or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their

fiduciary duties.

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the

fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 19, 2019

**GAINEY McKENNA & EGLESTON**


By: */s/ Thomas J. McKenna*
        Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY  10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*